## WARE & COWLES *vs.* DUDLEY.

1. Non-assumpsit *infra sex annos* is a good plea in *indebitatus assumpsit.*
2. To support a count on an account stated, it is not necessary to prove that
   there had been different items of account, cross demands, or mutual deal-
   ings between the parties: The admission of a certain sum due, in res-
   pect of a demand for which an action would lie, is evidence sufficient to
   sustain it.
3. Where the court gives an *affirmative* charge, which asserts an erroneous
   legal proposition, the presumption is, in the absence of every thing to ex-
   clude it, that there was some evidence on the point, that called for instruc-
   tion, although none appears in the bill of exceptions.
4. A pleading is to be taken most strongly against the party whose pleading
   it is; and where the plaintiff, in his replication to a plea of the defendant,
   avers that the promise alleged was to pay out of the proceeds of a note,
   " when said note was collected," the averment must be understood to mean
   when the *whole* amount was collected.

Error to the Circuit Court of Macon.   Tried before the
Hon. J. J. Woodward.

THE plaintiffs sued the defendant in error in *indebitatus as-
sumpsit,* and to the money counts added a count on an account
stated.   The defendant pleaded the general issue, and as his
third and fourth pleas the statute of limitations—avering in
the third that he did not "*undertake and promise within six
years next,*" &c., and in the fourth that he did not "*undertake
and promise within three years next,*" &c.   To each of these
pleas of the statute of limitations, the plaintiffs demurred, but
the court overruled the demurrers.   They then took issue on
the fourth plea, and replied to the third that on the — day of
—— 1840, the defendant had in his possession a promissory

Ware & Cowles v. Dudley.

note executed by John and Andrew Gibson, due on the 25th December 1841, for the sum of two thousand dollars—three-fourths interest in which belonged to Geo. W. Dillard and Alexander Burns; and that the defendant, at the request of Dillard and Burns, who were indebted to the plaintiffs by note in the sum of $875 95, promised to pay the plaintiffs the amount due on said note of Dillard and Burns out of the proceeds of said note executed by John and Andrew Gibson, when said last named note was collected, &c., and that the said note of John and Andrew Gibson was collected by the defendant within less than six years next before this suit was instituted, &c.

By the bill of exceptions it appears that the indebtedness of Dillard and Burns to the plaintiffs and of John and Andrew Gibson to the defendant were proven as stated in the replication, as well as the interest of Dillard and Burns in the note of the Gibsons. The evidence tended further to show that the plaintiffs in 1839 or 1840 delivered the note of Dillard and Burns to one Brazill, for the purpose of endeavoring to secure the payment thereof out of the proceeds of the note due by the Gibsons, and that Brazill had an interview with the parties, in which Dillard, Burns and the defendant agreed that, if the plaintiffs would allow an offset that Dillard and Burns claimed against them, they would endeavor to get the Gibsons to divide the note due by them and to execute one to the plaintiffs for an amount equal to the balance due to the plaintiffs on their said note against D. and B., or if the Gibsons refused to do so, that then the defendant would execute to the plaintiffs a note for that amount, and that they would meet said Brazill at his house on a named day, some two or three weeks thereafter, to carry out the arrangement. It further appears that they did not meet Brazill on the appointed day, but went to his house a day or two after to perfect the arrangement, but Brazill having given up the note to the plaintiffs, nothing further was done. The defendant collected all the money due on the note of the Gibsons in cash, except $150, and for the balance of $150 took a new note from John Gibson, which he passed to one Felton in discharge of a debt due by defendant to one Abbott, before the institution of the suit. The defendant on the cross-examination of Brazill asked him if he did not, on a

day and at a place which were named, inform John Gibson that the matter was not settled, because Ware, one of the plaintiffs, refused to allow the offset claimed by Dillard and Burns, to which he replied in the negative. The defendant offered to prove by John Gibson, that Brazill did so inform him on the day and at the place named; the plaintiffs objected to the proof, but the court overruled the objection. The court charged the jury: 1st—that under the count on the account stated, the plaintiffs could not recover, without showing that there were matters of account between the plaintiffs and defendant; 2d—that under the issue formed on the replication to the plea of the statute of limitations of six years, the enquiry for the jury was whether the whole of the note on John and Andrew Gibson had been collected before the suit was instituted and within six years next before its institution, and unless they should find that the whole had been collected within the six years, the replication was not sustained.

The plaintiffs excepted to the ruling and charges of the court, and now assign them as error.

Rice and Belser, for plaintiffs in error:

1. The decisions of the court upon the several demurrers are erroneous.

2. A plaintiff is entitled to recover, under the *insimul computassent* count, upon proof of any admission of indebtedness, although it may be only a *single* item of indebtedness. The charge is erroneous which asserts that plaintiffs could not recover, unless there were "*matters of account*" between the parties. This charge could not fail to work injury to plaintiffs in such a suit as this.

3. All the questions raised in the record are insisted on by plaintiffs in error.

Gunn, with whom was N. W. Cocke, for defendant:

1. The demurrer to the 3d and 4th pleas was properly overruled. Non-assumpsit *infra sex annos* is the proper plea in *indebitatus assumpsit.*—3 Chitty's Pl. 939, note f. and citations.

2. The first charge is somewhat indefinite and is certainly wanting in precision, but is not so manifestly erroneous as to reverse the case. The plaintiffs should have asked an expla-

nation and that it be made more specific.—Caskey v. Haviland, et als. 13 Ala. Rep. 314; Hodges v. The Br. Bank, 13 ib. 455; Kenan v. Holloway, at January term, 1849.

3. There was no error in the ruling of the court upon the testimony. The defendant had a right to impeach the plaintiffs' witness in the way he did. ·

4. The whole facts of the case, as made out by the plaintiffs, show that they had no cause of action. The ruling and charges of the court, if all were erroneous, could therefore do them no injury.—13 Ala. Rep. 517; 3 ib. 599; ib. 419; 2 Howard, (Miss.) 662; 1 Missouri, 318; 4 Ohio, 388.

PARSONS, J.—As the second plea was withdrawn it may be left out of view, and we think the demurrers to the third and fourth pleas were correctly overruled. The questions of law arise upon the count on an account stated and the bill of exceptions. It does not appear that there was any exception or charge touching the contract or proposition of the defendant as proved. The whole evidence in regard to it is, perhaps, not stated in the bill of exceptions. We refer to the question whether the defendant was ever bound by his offer or agreement, as it appears by the evidence, so far as that is stated in the bill of exceptions, to have been made on condition, that the plaintiffs were to allow a set-off, which Dillard & Burns claimed, and it does not appear to have been proved that the plaintiffs ever allowed, or agreed to allow the set-off. It was, therefore, a question if the defendant might not retract his offer at any time before it was acceded to by the plaintiffs. But with these questions, or with any question concerning the consideration of the defendant's alleged agreement, we have nothing to do at present.

If Brazill is the witness by whom the plaintiffs proved the alleged agreement of the defendant, and if he proved that it failed in consequence of any omission on the part of the defendant, then the defendant, on cross-examination, had a right to ask him if he did not, at a particular time and place, inform Gibson that the matter was not settled, because one of the plaintiffs refused to allow the set-off. And as Brazill denied this, the defendant had a right to prove it by Gibson. As already intimated, the bill of exceptions is obscure in this part,

52

and it does not even show that Gibson actually testified. We cannot reverse on this exception.

In the next place, the court charged that the plaintiffs could not recover under the count for an account stated, without showing that there were matters of account between the parties, and the plaintiffs excepted. This charge implies that there must have been different items, or cross demands, or mutual transactions, and in this there was error.—Brown on Actions at Law, 548. In Porter v. Cooper, 1 C. M. & R. 387, &c., Alderson B. said, " the cases have come to this, that an admission of a certain sum being due in respect of a demand for which an action would lie, is evidence sufficient to support an account stated." It is not necessary, for the purpose of supporting this count, that the plaintiff should give evidence of the several items constituting the account, but it is sufficient if he prove the account stated, for that is the cause of action.—Bartlett v. Emery, 1 T. Rep. 42. It is, therefore, evident that this charge threw the burthen of unnecessary proof upon the plaintiffs. This exception was not taken for a refusal to instruct. If it had been, the bill of exceptions should have stated so much of the evidence as was necessary to show that the charge ought to have been given. But the charge was given against the plaintiffs, and as a proposition of law, we think it was erroneous. In this view of the question we must presume that there was some evidence in the cause which called for instructions on the point, although such evidence may not appear by the bill of exceptions.—Peden v. Moore, 1 Stew. & Por. 71; Tharp v. The State, 15 Ala. Rep. 749. The court further charged, that under the issue formed on the replication to the plea of the statute of limitations of six years, which is the third plea, the enquiry for the jury was whether the *whole* of the note on the Gibsons had been collected by the defendant before this suit was commenced, and within six years of the time it was commenced, and there was an exception to this charge.

The replication states that the defendant promised to pay to the plaintiffs the amount of their debt against Dillard & Burns " out of the proceeds of said note executed by John & Andrew Gibson, when said note was collected," and then the replication avers that the same was collected within six years

next before this suit was commenced. If we take the defendant's promise to have been precisely as it is alleged in the replication, then it was a promise to pay when the note was collected, that is to say, the whole note; or more properly, the whole amount secured by it. Adhering to the letter of such a promise, this, we think, would be its effect. The whole amount of a note cannot be considered as collected, so long as a part remains unpaid. The full collection was the event on which the promise, taking it literally, was to be performed. It may be that the defendant had received enough on the note to discharge the plaintiffs' claim, but if it were his contract to pay when the whole amount should be received, we cannot say that part was equivalent for this purpose to the whole. In saying that, we should assume the power of modifying the the contract of the parties, not of expounding it. It may be admitted that the promise, as stated in the replication, does not show the real intention of the parties with any certainty. This we feel and admit, and it follows that the promise in this respect is doubtful. But in all doubtful questions of the kind, the safe rule is to adhere to a literal construction, so long as that is not absurd or clearly unreasonable. It may have been the real intention of the defendant not to bind himself to pay until he received the whole amount of the note on the Gibsons. It appears by the replication that he owned a portion of the note himself—that the residue belonged to Dillard & Burns. It does not appear by the replication that he promised to pay their debt out of his portion. To avoid the necessity of this, it may have been his intention not to bind himself to pay until he had received the whole amount. Then he would certainly have enough without appropriating his own part—hence, a literal construction in this case is not clearly unreasonable. This appears to have been a parol promise, not in writing. We do not mean to say that the particular words that the parties may chance to use in such contracts must in all instances have their usual effect. That should never be when it would violate their clear intentions. In such cases, however, these contracts should be stated in the pleadings according to the real intention of the parties, or, in other words, according to their legal effect. The evidence is another thing—if that proves that they employed words, which did not aptly ex-

press their meaning, they can be rejected or qualified, so as to carry out the real intention of the parties. But the replication in this case states a promise, the effect of which, as stated, was to pay after the defendant had collected the whole amount of the note, and it avers that he did collect it all. A pleading is taken most strongly against the party whose pleading it is. We think there is no error in this charge. The court qualified the charge, but as the qualification was favorable to the plaintiffs and not excepted to, it is not necessary to notice it.

It is not necessary to decide the last exception. Let the judgment be reversed, and the cause remanded.