# Nooe's Executor *v.* Garner's Adm'r.

### *Contest of Creditor's Claim against Insolvent Estate.*

1. *Revision of disputed question of fact.*—The former decisions of this court "have declared three rules, from which the court has no wish to depart." They are: 1. When a contest of fact, properly triable before a jury, is by consent submitted for decision to the presiding judge, this court will not review his finding on the facts, any more than it would the finding of a jury: it is not assignable as error. 2. When the case is properly triable before the court, as in chancery causes, but is tried on testimony reduced to writing, witnesses not being examined in the presence of the court, the finding is presumed to be correct, and this court will not reverse it, unless there is a decided preponderance of evidence against the conclusion attained. 3. When the law authorizes a disputed question to be tried by the court without a jury, and it is so tried, on testimony given *viva voce* in the presence of the court, the finding will not be reversed on error or appeal, unless it is so manifestly against the evidence that a judge at *nisi prius* would set aside the verdict of a jury rendered on the same evidence.

2. *Contest of claim against insolvent estate; how tried.*—When objection is made to the allowance of a claim filed against an insolvent estate, and an issue is thereupon made up between the claimant and the administrator, as required by the statute (Code, § 2575), either party may demand a trial by jury, and it is error to refuse it when demanded; but, if a jury is not demanded by either, it is the duty of the judge to hear the evidence and decide the issue; in which case, the court acts as a court of law, and is governed by the rules which prevail in courts of law.

3. *Same; revision on appeal.*—In such case, on appeal to the Circuit Court, the trial is not *de novo*, but on a certified transcript of the proceedings in the Probate Court, as on appeals to this court; and that court should not reverse the finding of the probate judge, unless it is so manifestly against the evidence that a judge at *nisi prius* would set aside a verdict rendered on the same evidence.

[Nooe's Executor v. Garner's Adm'r.]

4. *Production of part of letter only, or letter without inclosure.*—When part of a letter only is produced by a party who relies on it to establish his claim, and the destruction or loss of the residue is not shown, the failure to produce it is a suspicious circumstance against him; and the same rule applies to the failure to produce any other writing, referred to in the letter as being inclosed.

5. *Admission operating as stated account.*—An admission, whether oral or written, of an indebtedness in a specific sum, makes the demand an account stated, and takes it out of the statute of limitations of three years.

6. *Same.*—A letter, written to an attorney and solicitor, by his client, in reference to his charge for professional services rendered in a chancery ·suit, in the lower court and on appeal, contained these expressions: "I ·*agree* with you, and *think* myself that your exertions in the appeal case ·*are* well worth the $500 you charge. But I *did think*, and do *now believe* the $3,000, the charge in the case, *was* too much. Still, as the opposite party received that amount, I *did not expect* to get off with less." *Held*, construing this letter in connection with the attorney's letter to which it was a reply, and which, while mentioning with particularity the services on the appeal, did not in terms refer to the case in the lower court, or to the fee charged for the services there rendered, was an admission of a present indebtedness only as to the $500, and referred to the charge of $3,000 as a past transaction.

APPEAL from the Circuit Court of Franklin.

Tried before the Hon. W. B. WOOD.

In the matter of the insolvent estate of A. L. Garner, deceased, which was declared insolvent by the Probate Court of said county on the 19th April, 1869, and against which a claim was filed on the 27th September, 1869, in favor of "the estate of John A. Nooe, deceased." The claim was verified by the affidavit of L. B. Thornton, and consisted of a single item, which was thus expressed: "December 27, 1859. To fees in Prewitt and Garner case, in Chancery Court, and Supreme Court of Alabama, agreed upon, $3,500." Objections to the allowance of this claim were filed by the administrator, within the time allowed by law, on these grounds: "1st, that said claim is not just; 2d, that said Garner did not owe said claim; 3d, that said ·claim is barred by the statue of limitations of six years; 4th, that said claim is barred by the statute of limitations of three years; 5th, that said claim has been paid." Thereupon, a complaint was filed in the name of Mrs. Hariet E. Smith, as the executrix of the last will and testament of John A. Nooe, against Garner's administrator, claiming " the sum of $3,500 on an account stated between the testator of the plaintiff and the defendant's intestate, on the 27th December, 1859; which sum, with the interest thereon, is now due and unpaid, except about the sum of $175 paid on said stated account by defendant's intestate in the years of 1860–63, which will be allowed as a credit; " and to this complaint the administrator filed five pleas, " in short by consent," which were the same in substance as the objections filed to the allowance of the claim. " On the trial

of the cause, on the pleadings made up," as the bill of exceptions states, " the following evidence was introduced," setting it out, with several rulings of the court to which exceptions were reserved by the administrator ; and then concluding thus : " The above being all the evidence introduced, the court decides the issue in favor of the plaintiff ; to which decision the defendant excepts." The recital of the judgment-entry is, " Came the parties, by their attorneys, and issue being joined on the said claim so contested, and the court having heard all the evidence adduced touching the same, and the argument of counsel thereon, and being satisfied therefrom that said claim is a just and proper charge against said estate, to the extent of $7,157.50, including interest ; it is therefore ordered, adjudged," &c., that the plaintiff have and recover the said amount, and be entitled to a *pro-rata* share of the assets of the insolvent estate.

From this judgment and decree the administrator took an appeal to the Circuit Court, and there assigned as errors on the transcript of the record the several rulings to which he reserved exceptions before the Probate Court, and the judgment of that court. The claimant moved to dismiss the appeal, on several grounds, which it is unnecessary to notice, and which the court overruled, holding that they were not sustained by the record. The court then proceeded to render judgment on the facts set out in the record, and on the errors assigned, holding that the claim, if not paid, was barred by the statute of limitations ; and therefore rendered judgment, reversing the decision of the Probate Court, and disallowing the claim. From this judgment the claimant appeals, and here assigns it as error.

There was no controversy as to the rendition of the professional services by Nooe, or the value of those services ; the only controverted questions being, whether the claim was paid, and, if unpaid, whether it was barred by the statute of limitations. The material facts, bearing on these questions, are stated in the opinion of the court.

O'NEAL & O'NEAL, J. B. MOORE, and R. S. WATKINS, for appellant.—1. The case having been submitted to the decision of the Probate Court, neither party demanding a jury, the decision rendered by the court stands as the verdict of a jury, and will not be reviewed by an appellate court. This is the rule of this court, on direct appeals from the Probate and Circuit Courts ; and the reasons on which it is founded equally apply to the Circuit Court, when acting on appeals from the Probate Court.—*Etheridge v. Malempre*, 18 Ala. 565 ; *Bott v. McCoy & Johnson*, 20 Ala. 578 ; *De Vendell v. Hamilton*, 27 Ala. 156 ; *Gaillard v. Duke*, 57 Ala. 619. Even if the Cir-

cuit Court had power to revise and review the decision of the Probate Court, on questions of fact as to which the evidence was conflicting, that decision ought not to be disturbed, "unless manifestly erroneous"—in other words, "unless there is a decided preponderance of evidence against its correctness," which would justify the court in setting aside the verdict of a jury.—*Kirksey v. Kirksey*, 41 Ala. 626; *Bogan v. Daughdrill*, 51 Ala. 317; *Harwood v. Pearson*, 60 Ala. 410; *Phillips v. Phillips*, 39 Ala. 63; *Kennedy v. Marrast*, 46 Ala. 161.

2. The question of the statute of limitations was not presented to the Circuit Court, by the assignment of errors made on the record; and if it had been properly presented, the court erred in holding that the claim was barred. Under the evidence, the claim was a stated account, and could only be barred by the statute of six years.—*Langdon v. Roane*, 6 Ala. 518; *Ware v. Dudley*, 16 Ala. 472; *Walker v. Driver*, 7 Ala. 679; *Chapman v. Lee's Adm'r*, 47 Ala. 143; *Ryan v. Gross*, 48 Ala. 370; *Wharton v. Cain*, 50 Ala. 408. As a stated account, the accrual of the claim dates from December 27th, 1859, the date of Garner's letter acknowledging and promising to pay it; and making the necessary statutory deductions, the six years had not expired when the claim was presented.

3. The only defense available against the claim was payment; and the *onus* on this issue was on the defendant. If the evidence is equally balanced, or leaves the matter in doubt, the defense is not sustained.—*Harris v. Bell*, 27 Ala. 520; *Jarrell v. Lillie*, 40 Ala. 271; *Shulman v. Brantley & Copeland*, 50 Ala. 81.

W. Cooper, *contra*.—All the evidence adduced on the trial is set out in the bill of exceptions reserved to the judgment and decree of the Probate Court; and that decision, being the judgment of the law on the facts, was revisable on error or appeal.—*Bradley v. Andress*, 30 Ala. 80; *Bogle v. Bogle's Adm'r*, 23 Ala. 546; *Gaillard v. Duke*, 57 Ala. 619. As to the correctness of the judgment of the Circuit Court, the appellee relies on the able opinion of the presiding judge giving his reasons for the judgment.

STONE, J.—The controlling question in this cause is one of fact, and involves the revision of a finding on testimony. Our former decisions have declared three rules, from which we have no wish to depart:

*First:* When a contest of fact, properly triable before a jury, is, by consent, submitted to the judge presiding for decision. In this class of cases, this court will not review the finding of the judge on the facts, any more than it would the

finding of a jury. It is not assignable as error.—*Etheridge v. Malempre*, 18 Ala. 565; *Barnes v. Mayor*, 19 Ala. 707; *Bott v. McCoy*, 20 Ala. 578; *De Vendell v. Hamilton*, 27 Ala. 156. We have a recent statute, which authorizes the submission of disputed questions of fact to the court without a jury, but it does not affect this case.—Code of 1876, § 3029.

*Second:* When the case is properly triable before the court, as in chancery causes, but is tried on testimony reduced to writing; not examined in the presence of the court. A finding thus rendered is presumed to be correct, and will not be reversed in this court, unless there is a decided preponderance of evidence against the conclusion he attained.—*Rather v. Young*, 56 Ala. 90; *Bryan v. Hendrix*, 57 Ala. 387.

*Third:* When the law authorizes the disputed question to be tried, and it is tried, by the court without a jury, on testimony given *viva voce* in the presence of the court. In such cases, the rule is, not to reverse the finding, unless it is so manifestly against the evidence, that a judge at *nisi prius* would set aside the verdict of a jury, rendered on the same testimony. *Kirksey v. Kirksey*, 41 Ala. 626; *Harwood v. Harper*, 54 Ala. 659; *Gaillard v. Duke*, 57 Ala. 619; *Harwood v. Pearson*, 60 Ala. 410; *Ex parte McAnally*, 53 Ala. 495; *Ex parte Weaver*, 55 Ala. 250; *Ex parte Nettles*, 58 Ala. 268.

When objections are properly made to the allowance of a claim filed against an insolvent estate, "the court must cause an issue to be made up between the claimant and the administrator; * * in which issue, the correctness of such claim must be tried, as in an action of law against an administrator, if required."—Code of 1876, § 2575. Our construction of this section is, that either party to such issue may demand a jury trial; and if a jury is required (demanded by either party), then a jury must be called; and if, after such demand, the judge should proceed to try the issue without a jury, this would be error. On the other hand, if neither party require a jury, it then becomes the duty of the judge to hear the evidence, and determine the issue. In doing so, he simply performs a function the law casts upon him, constituting him judge alike of the facts and of the law.—*Blankenship v. Nimmo*, 50 Ala. 506. The Court of Probate, in such trial, is a court of law, and governed by the rules which pertain to law courts. As a rule, the evidence is introduced orally before the court, and he has the opportunity of observing the witnesses and their manner while testifying. This case falls within the third class defined above.

The Probate Court allowed the claim in controversy. On appeal to the Circuit Court, the ruling of the Probate Court was reversed, and the claim disallowed. The ruling of the

[Nooe's Executor v. Garner's Adm'r.]

Circuit Court is here assigned as error. The trial in the Circuit Court was had, and properly had, on the certified transcript of the proceedings in the Probate Court. It was not *de novo*, and the witnesses were not before the Circuit Court. It follows that, in passing on the Probate Court's finding, the Circuit Court was subject to rule number 3, of our classification *supra*. He should not have reversed the finding of the Probate Court, unless he, as a presiding judge, would have set aside the verdict of a jury rendered on the same testimony.

Exception is raised to the competency of the witness Thornton, to prove transactions with, or statements by Garner, defendant's intestate. His material testimony is confined to admissions of indebtedness, alleged to have been made by Garner in 1866. We think the testimony satisfactorily proves that, at that time, Garner was of unsound mind; and hence his admissions must go for nothing. His testimony being thus rejected from consideration, we need not inquire whether the interest he had in the result of the suit rendered him incompetent to testify. This reduces the question of the indebtedness of Garner's estate to Nooe's estate, to the single inquiry, does Garner's letter, which was put in evidence, admit an indebtedness of the three thousand dollars, claimed for services rendered in the chancery suit of Prewitts *v.* Garner? If it does not, there is no evidence in support of that item of the account. If it does amount to an admission, this constitutes the claim a stated account, and is an answer to the plea of the statute of limitations, so far as this record discloses.

On the 17th October, 1859, Garner wrote to Nooe, as follows: "Please advise me how much I am owing you and Mr. Irvin, for attending to my business, or law matters." On the 27th December, Garner again wrote to Nooe, in which he said: " I also received your esteemed favor, advising me of your views in reference to law matters. I agree with you, and think myself that your exertions in the appeal ·case are well worth the five hundred dollars you charge. But I did think, and do now believe the 3,000 dollars, the charge in the case, was too much. Still, as the opposite party received that amount, I did not expect to get off with less. Still, let me have two or three years to draw breath, and I will pay you five hundred dollars, at present I am pressed in money matters. I have not heard from the judgment against Prewitts; you will be so good as to collect all that money, or the amount of the judgment, and apply the same to your own use; see what amount I am due you, give me credit for half of the judgment against Prewitts, and ascertain the amount I am due you to date, and I will forward the money to you. Please forward all my notes that I have paid, and, if you prefer retaining the deeds, I am perfectly sat-

isfied." In the above extract, we have endeavored to retain the punctuation, as we find it in the transcript. In part explanation of the apparent jumble in Mr. Garner's letter, it is proper we should say, Nooe had sold a tract of land to him, and part of the purchase-money remained unpaid. We infer that, at this time, Nooe withheld title from Garner, possibly as security for the purchase-money.

There was put in evidence a letter from Nooe to Garner, dated October 18th, 1859, which was evidently an answer to Garner's letter of October 17th, copied above, so far as material to this case. The first sentence of that letter is, "On going to the office to day, to mail the other sheets included with this, I received your letter inquiring the amount of fees due from you to Mr. Irvin and myself." The letter then goes on to speak of a suit and recovery of judgment in favor of Garner against Prewitts, for $970, one-half of which was to be fees, and the other half, $485, would be due to Garner. The letter proceeds to vindicate this charge, as both reasonable, and in accordance with the agreed terms of the retainer. This is the sum which Garner refers to in his letter of December 27th, in which he says, "give me credit for my half of the judgment against Prewitts." This money was collected by Nooe, and amounted, with the interest, to a fraction over five hundred dollars. Nooe, in his said letter of October 18th, uses this language: "As you have seen my arguments—the one printed on the merits of Chancellor Walker's decision in the chancery case, and the other on the motion to dismiss the appeal—you have some idea of the labor I did." He then speaks of the time and labor he employed in preparing the two arguments, his expense in attending the Supreme Court, and adds: "As you had such bad luck, I don't feel disposed to charge you a fee commensurate with my services; but I think you ought to be willing to pay me $500, and it may be in full discharge for my printed argument. * * I know you appreciate this argument, and without making any charge of a fee in the Supreme Court, I submit to you. Respectfully, *John A. Nooe.*"

It is manifest, this is not the entire letter written by Nooe to Garner. The first sentence shows there were other sheets "included with this." What was their subject, or substance, we have no means of knowing. Garner's letter of 27th December shows that he had learned that Nooe's charge in the Chancery Court was three thousand dollars. That charge, and that subject, are not referred to in Nooe's letter, or part of letter, that was put in evidence. Hence, Garner must have known it previously, or must have learned it from some other source. It is to be lamented that Nooe's entire letter was not in evidence; and if its destruction or loss is not shown, the failure

to produce it is a suspicious circumstance. Nooe's letter, as put in evidence, mentioned two subjects; the suit and recovery against Prewitts of $970, and the charge of $500 for the printed brief. Garner's letter, if a reply to this, refers to each of the above subjects, and also to the fee of $3,000 in the Chancery Court, and to the debt, or balance of debt, for lands.

But, in the letters themselves, there is an embarrassing want of precision, if not an irreconcilable incongruity. This may, to some extent, grow out of the fact, that Garner owed Nooe on the land purchase, and Nooe was also claiming for professional services; and a discrimination between the two classes of claims was not always preserved. The fragmentary character of the correspondence also tends to obscure the transaction. Still, the want of precision is patent. The pains taken by Nooe to explain two items of charge, and his silence as to the other and much larger claim, are noteworthy circumstances in this investigation. This is relied on by appellee, as tending to show that, at that time, Nooe had no other claim for professional services. On the other hand, assuming that the fee for services in the Supreme Court, and for the printed brief, was the extent of Nooe's charge, it is difficult to understand why Garner, in his letter of December 27th, should "want two or three years to draw breath.'" His interest in the Prewitt judgment would about pay the $500 Nooe charged for the printed brief. The following two clauses in Garner's letter are difficult to reconcile: "Still, let me have two or three years to draw breath, and I will pay you five hundred dollars. At present I am pressed in money matters. * * See what amount I am due you, give me credit for my half of the judgment against Prewitts, and ascertain the amount I am due you to date, and I will forward the money to you." In one sentence he asks for breathing time; in the other, he speaks of forwarding to Mr. Nooe what should be ascertained to be due him, and speaks in such terms as to imply a promise to pay promptly and presently.

It is certainly true, and well settled, that the admission by one of an indebtedness to another, in a specified sum, whether made orally, or in writing, constitutes the claim an account stated, and it may be recovered on as such.—*Langdon v. Roane*, 6 Ala. 518; *Walker v. Driver*, 7 Ala. 879; *Ware v. Dudley*, 16 Ala. 742; *Chapman v. Lee*, 47 Ala 143; *Ryan v. Gross*, 48 Ala. 370; *Wharton v. Cain*, 50 Ala. 408. Less than this will sometimes constitute an account stated. Appellant contends that the following sentence in Mr. Garner's letter makes the present claim an account stated: "But I did think, and do now believe the 3,000 dollars, the charge in the case, was too much. Still, as the opposite party received that amount, I did not expect to get off with less." This language immediately

[Nooe's Executor v. Garner's Adm'r.]

follows the following clause in the letter: "I agree with you, and think myself, that your exertions in the appeal case are well worth the five hundred dollars you charge." Now, the sentence last copied—that which relates to the five hundred dollars—speaks in the present tense, and denotes a transaction open and unfinished. The one which refers to the three thousand dollar charge is in the imperfect tense, and denotes a past transaction. "I *did* think, and do *now* [*still*] believe the $3,000 *was* too much; but, as the opposite party received that amount, I *did* not expect to get off with less." Construing this as the expression of an opinion that in a former transaction he had been made to pay too much, the language is appropriate, and expressed throughout in the proper tense. On the other hand, if he had been replying to a demand made by Nooe of the two sums—the $500 for preparing the printed argument, and $3,000 for services in the Chancery Court—his language throughout would have been in the present tense. It would have been about as follows: "I think the $3,000 charged in the chancery case is too much; but, as the opposite party received that amount, I do not expect to get off with less." Of course, if Nooe's letter, to which Garner was replying, contained a demand for the two sums, then that would show our construction is at fault. Taken by itself, it is an admission of the item of $500, as an account stated. It is not an admission of the item of $3,000, as a subsisting debt. Possibly, the missing sheets of Nooe's October letter would supply this link in the testimony. We therefore hold there is no evidence in support of the item or charge of three thousand dollars.

The testimony speaks of a printed brief in reply to Chancellor Walker's decree, and also speaks of Nooe's services on the motion to dismiss in the Supreme Court. Whether these are one and the same thing, we have no certain means of ascertaining, but they appear to be separate items. This was probably understood, or could have been explained in the Probate Court. The land purchase made by Garner of Nooe, a part of which we suppose was then unpaid, adds to the uncertainty of the admission and promise in Garner's letter, in which he admitted he owed five hundred dollars, and promised to pay it. He also impliedly admits a larger indebtedness than his half of the Prewitt judgment, when he says: "See what I am due you; give me credit for my half of the judgment against Prewitts, and ascertain the amount I am due you to date, and I will forward the money to you." But the admission is sufficient, only to the extent of five hundred dollars. To that extent, and that only, does the letter constitute the claim an account stated. If Garner's share of the Prewitt judgment was applied to this—in other words, if it was not shown that it was

[Munford v. Pearce.]

applied to another subsisting demand,—then the $500 was paid when Nooe collected and appropriated. Garner's half of the Prewitt judgment.

We have thus shown that there is an entire failure of proof to establish the item of $3,000 in appellant's claim, and, to that extent, the judgment of the Circuit Court is free from error. The item of $500 stands in a different attitude. As to that item, the Circuit Court could not affirm there was no testimony. He should have remanded the cause, for further trial and judgment in the Probate Court.—*Harwood v. Harper*, 54 Ala. 659.

The judgment of the Circuit Court is reversed, and the cause remanded, that that court may reverse the judgment of the Probate Court, and remand the cause for another trial, in conformity with the principles above declared. The question of the whole claim will be open for further proof, if it can be made.